UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS GOOLSBY, | 1:11-cv-00394-LJO-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST REMEDIES BE GRANTED |
| vs. | |
| FERNANDO GONZALES, et al., | (Doc. 45.) |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I.    BACKGROUND

Thomas Goolsby ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on March 8, 2011.  (Doc. 1.)  This case now proceeds on Plaintiff's First Amended Complaint, filed on September 17, 2012, against defendant T. Steadman ("Defendant") for retaliation in violation of the First Amendment.[1]  (Doc. 13.)

On August 13, 2014, Defendant filed a motion for summary judgment under Rule 56 on the grounds that the undisputed facts establish that Plaintiff failed to exhaust his available administrative remedies with respect to the allegations against Defendant in this action.  (Doc. 45.)  On August 29, 2014, Plaintiff filed an opposition to the motion.  (Doc. 49.)  On October 6, 2014, Defendant filed a reply to Plaintiff's opposition.  (Doc. 56.)  Defendant's motion for summary judgment is now before the Court.

---

[1] On April 22, 2013, the court dismissed all remaining claims and defendants from this action based on Plaintiff's failure to state a claim.  (Doc. 17.)

## II.     PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT STEADMAN

Plaintiff is presently incarcerated at Pelican Bay State Prison in Crescent City, California.  The events at issue in the First Amended Complaint allegedly occurred at the California Correctional Institution (CCI) in Tehachapi, California, when Plaintiff was incarcerated there.  Plaintiff's factual allegations follow.

On January 20, 2010, Plaintiff appeared before the Institution Classification Committee (ICC) at CCI after completing approximately four years in the Security Housing Unit (SHU) and a six-month indeterminate SHU term.  The ICC was chaired by Chief Deputy Warden T. Steadman, who recommended Plaintiff's release from the SHU, transfer to another prison facility, and retention in administrative segregation (Ad-Seg) pending transfer.  Plaintiff asked why he was being retained in Ad-Seg pending transfer.  Defendant Steadman told him, "Usually we release SHU kick-outs to CCI's General Population Yard, but because you like to file lawsuits your (*sic*) going to go sit in Ad-Seg and make you re-think what and who you file on." (First Amd Cmp (FAC) at 6 ¶3.)  On January 30, 2010, Plaintiff was transferred to Ad-Seg and lost all of his property, including a television.

Later, Plaintiff appeared again before the ICC which was again chaired by defendant Steadman.  Steadman asked Plaintiff, "Are you ready to cooperate and stop those 602's and lawsuits?  Drop them and I'll kick you out to the Mainline right now." (FAC at 6 ¶5.)  Plaintiff replied that he has a right to file inmate appeals and lawsuits and told Steadman, "You can't put me in the hole because of it."  Id.  Steadman said, "Thirty more days!"  Id.  Plaintiff said, "I'm gonna get at Warden Gonzales about this!  This is illegal."  Id.  Steadman laughed and said, "Who's (*sic*) idea do you think it was to keep you in [Ad-Seg] in the first place?  We can do whatever we want.  We own you." (FAC at 6-7 ¶5.)

On May 4, 2010, Plaintiff's transfer from CCI was delayed again, forcing him to stay longer in Ad-Seg.  Plaintiff was kept in "the hole" by Warden Gonzales and defendant Steadman, in retaliation for Plaintiff filing and maintaining 602 appeals and lawsuits, "chilling" Plaintiff's activities.  (FAC at 7 ¶6.)

///

2

## III.    LEGAL STANDARDS

### A.    Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006). When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

### B.    California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal.Code Regs.

///

tit. 15 § 3084.1(a).   The process is initiated by submitting a CDCR Form 602.   Id. at § 3084.2(a).

At the time of the events giving rise to the present action, California prisoners were required to submit appeals within fifteen working days of the event being appealed, and the process was initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level.   Id. at §§ 3084.5, 3084.6(c) (2009).   Four levels of appeal were involved, including the informal level, first formal level, second formal level, and third formal level.   Id. at § 3084.5 (2009).   A final decision at the third level[2] of review satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a).   Id. at § 3084.5(d); see Lira v. Herrera, 427 F.3d 1164, 1166 (9th Cir. 2005).   In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.   Woodford, 548 U.S. at 85; McKinney, 311 F.3d at 1199-1201.

**C.      Motion for Summary Judgment for Failure to Exhaust**

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).   On April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a).   Albino v. Baca, 747 F.3d 1162, 1168–69 (9th Cir. 2014) (en banc).   Following the decision in Albino, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[3] or (2) a motion for summary judgment under Rule 56.   Id.   If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(e).   Jones, 549 U.S. at 223–24; Lira, 427 F.3d at 1175–76.

///

---

[2] The third level is sometimes known as the Director's level.

[3] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint."   Albino, 747 F.3d at 1162.

4

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Albino</u>, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.")  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).  In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011).  The Court must liberally construe Plaintiff's filings because he is a pro se prisoner. <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." <u>Albino</u>, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." <u>Id.</u>  The ultimate burden of proof remains with defendants, however. <u>Id.</u>  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." <u>Id.</u> at 1166.

## IV.   DEFENDANT'S STATEMENT OF UNDISPUTED FACTS (DUF)[4]

1. Plaintiff was incarcerated at California Correctional Institution (CCI) from January 20, 2010 through May 20, 2010, during the time of the alleged retaliatory actions by Defendant.  (First Amended Complaint (FAC) (Doc. 13 at 6 & 7.)[5]

2. The events underlying Defendant's alleged First Amendment retaliatory actions against Plaintiff allegedly began on January 20, 2010, when it was recommended that Plaintiff be released from the Security Housing Unit (SHU) and placed in Administrative Segregation (AdSeg), and ended on May 20, 2010, when Plaintiff was released from AdSeg to the general population at CCI. (Docs. 1 & 13.)

3. On January 20, 2010, Plaintiff appeared before the Institution Classification Committee (ICC) at CCI.  (FAC at 6.)

4. On January 20, 2010, the ICC was chaired by Defendant and it recommended Plaintiff's release from the SHU, transfer to one of two alternate institutions, and placement in AdSeg pending the transfer.  Plaintiff alleges he asked the Defendant why he was being retained in AdSeg pending the transfer, to which Defendant allegedly replied, "usually we release SHU kick-outs to C.C.I.'s 4A general population yard, but because you like to file lawsuits your [*sic*] going to go sit in Ad-Seg and make you re-think what and who you file on."  On January 30, 2010, Plaintiff was transferred from the SHU to AdSeg. (FAC at 6.)

5. On April 8, 2010, Plaintiff returned to the ICC, which was again chaired by Defendant.  (FAC at 6; <u>See</u> Briggs Decl. Ex. B.)  Plaintiff alleges that Defendant asked him if he was "ready to cooperate and stop these 602's and lawsuits? Drop them and I'll kick you out to the mainline right now."  When Plaintiff

---

[4] Defendant submits these facts for purposes of this motion only.  (Doc. 45-2 at 1:21-22.)

[5] DUF 1-7.  Plaintiff does not dispute these facts.  (Doc. 49 at 45-47.)

replied he had a "right to file inmate appeals and lawsuits," Defendant allegedly detained Plaintiff in AdSeg for thirty more days.  (FAC at 6.)  Plaintiff was retained in AdSeg pending the next anticipated review date of May 6, 2010.  (FAC at 7; See Briggs Decl. Ex. B.)

6.   On May 4, 2010, Plaintiff's transfer from CCI was again delayed and he remained in AdSeg.  (FAC at 7.)

7.   On May 20, 2010, the ICC, chaired again by Defendant, released Plaintiff from AdSeg to CCI's general population.  (See Doc. 1 at 6; Briggs Decl., Ex. C.)

8.   Between January 20, 2010, and March 8, 2011, Plaintiff submitted four grievances that were in some way related to his placement and retention in AdSeg in and around the time of January 20, 2010 and May 20, 2010.  All four appeals were submitted to, and reviewed at, the Director's Level, but none alleged that Defendant was retaliating against Plaintiff for exercising his First Amendment rights.  (Rosander Decl. ¶ 6; Briggs Decl. ¶ 8.)[6]

9.   On April 1, 2010, Plaintiff submitted appeal IAB Case No. 0923876 (institutional log no. CCI-0-10-00486).  Plaintiff complained that the March 31, 2010 Segregation Hearing violated his due process rights because he was not provided with a staff assistant or an investigative employee and he did not decline to have witnesses present at the hearing.  Plaintiff did not claim that he was placed or retained in AdSeg by Defendant in retaliation for filing inmate 602 appeals or lawsuits.  (Rosander Decl. ¶ 7; Ex. E.)[7]

10.   Plaintiff's appeal, IAB Case No. 0923876, was submitted to, and denied at, the Director's Level of Review.  In this appeal, Plaintiff did not claim that he was

---

[6] DUF 8.  Plaintiff disputes the assertion that "none of [his appeals] alleged that Defendant was retaliating against Plaintiff for exercising his First Amendment rights."  (Doc. 49 at 40-41 ¶8.)

[7] DUF 9.  Plaintiff disputes the assertion that he "did not claim [in any of his appeals] that he was placed or retained in AdSeg by Defendant in retaliation for filing inmate 602 appeals or lawsuits."  (Doc. 49 at 41 ¶9.)

placed or retained in AdSeg by Defendant in retaliation for filing inmate 602 appeals or lawsuits.  (Briggs Decl. ¶ 9; Ex. A.)[8]

11.  On May 18, 2010, Plaintiff submitted appeal IAB Case No. 1002158 (institutional log no. CCI-0-10-00698).  Plaintiff complained that he was not transferred to another institution, in violation of Title 15, because two employees (but not Defendant) did not properly complete the necessary transfer paperwork.  This appeal was partially granted at the First Level of Review; however, Plaintiff, dissatisfied with this response, requested a Second-Level Review on June 14, 2010, to address why he still had not been transferred from CCI.  (Rosander Decl. ¶ 8; Ex. F.) At the Second-Level, Plaintiff's appeal was partially granted.  (Id., Ex. G).[9]

12.  On July 16, 2010, Plaintiff requested Director's Level Review of the appeal given institutional log no. CCI-0-10-00698 and IAB Case No. 1002158, because his transfer from CCI was still pending.  On October 27, 2010, this appeal was accepted for Director's Level review.  In the appeal, Plaintiff complained that his lack of transfer to another institution was "solely" because classification counselors (not Defendant) repeatedly failed to properly prepare his case for transfer, which was "pure retaliation" for appealing.  At the Director's Level, Plaintiff's appeal was denied.   In this appeal, Plaintiff did not mention Defendant, either by name or inference, nor did he contend he was placed and/or

---

[8] DUF 10.  Plaintiff disputes the assertion that he "did not claim [in appeal log no. CCI-0-10-00486] that he was placed or retained in AdSeg by Defendant in retaliation for filing inmate 602 appeals or lawsuits."  (Doc. 49 at 42 ¶10.)

[9] DUF 11.  Plaintiff disputes this fact because it does not assert that Plaintiff also complained of his needless AdSeg retainment in appeal log no. CCI-0-10-00698.  (Doc. 49 at 42 ¶11.)  However, Plaintiff has not disagreed with any part of DUF No. 11 as stated.  Therefore, this is not a disputed fact.

retained in AdSeg as retaliation for filing inmate appeals or lawsuits.  (Briggs Decl. ¶ 10 ; Ex. B.)[10]

13.   On June 6, 2010, Plaintiff submitted IAB Case No. 1003443 (institutional log no. CCI-0-10-00789).  Plaintiff specifically appealed "adverse" actions taken by the Unit Classification Committee (UCC) on June 2, 2010, but he did not appeal issues regarding placement and retention in AdSeg by Defendant as retaliation for filing inmate appeals or lawsuits.  (Rosander Decl. ¶ 9; Ex. H.)[11]

14.   Plaintiff's appeal, IAB Case No. 1003443 (institutional log no. CCI-0-10-00789) was denied at the Director's Level of Review.  (Briggs Decl. ¶ 11; Ex. C.)

15.   On June 30, 2010, Plaintiff submitted IAB Case No. 1003455 (institutional log no. CCI-0-10-00909).  Plaintiff complained that his placement in AdSeg on June 27, 2010, was in retaliation for exercising his protected rights under the Constitution.  On June 27, 2010, Plaintiff was placed in AdSeg because Sergeant Doser observed him passing a note to another inmate while on CCI's Level IV-A General Population yard. Plaintiff's note requested a CDC-128G form from that inmate.   Requesting another inmate's CDC-128G form is commonly referred to as "checking paperwork," and is done to incite violence, gather information about an inmate's commitment offense, and ensure they are in good standing with a prison gang or disruptive group.  CDCR considers an inmate who is checking paperwork an immediate threat to the safety and security of the institution, which requires their removal from general population and placement in AdSeg.  (Rosander Decl. ¶ 10; Ex. I.)

16.   Plaintiff's appeal given institutional log no. CCI-0-10-00909 and IAB Case No. 1003455, concerned Plaintiff being placed in AdSeg from general population on

---

[10] DUF 12.  Plaintiff disputes the inference that appeal log no. CCI-0-10-00909 did not place prison officials on notice that he was challenging retaliation or his retention in AdSeg.  (Doc. 49 at 43 ¶12.) However, Plaintiff has not disagreed with any part of DUF No. 12 as stated.  Therefore, this is not a disputed fact.

[11] DUF 13-18.  Plaintiff does not dispute these facts.  Plaintiff admits that appeals log nos. CCI-0-10-00789 and CCI-0-10-00909 are not connected with the present lawsuit.  (Doc. 49 at 48-50.)

June 27, 2010, not the recommendation that he be placed in AdSeg on January 20, 2010, his actual placement in AdSeg on January 30, 2010, or his continued retention in AdSeg through May 20, 2010.  This grievance alleges retaliation by CDCR staff because Plaintiff contends he was "checking paperwork" only to gather information for a group appeal he was compiling, rather than for other "illicit purposes."  Therefore, when staff placed him in AdSeg, Plaintiff contends it was done as "an effort to curb [his] litigating activities."  This appeal was denied at the Director's Level of Review.  (Rosander Decl. ¶ 10; Briggs Decl. ¶ 12; Ex. D.)

17.   At the relevant time in this case regarding the alleged incidents from January 20, 2010 through May 20, 2010, Title 15 Regulations required prisoners, such as Plaintiff, to submit an appeal within fifteen working days of the event or decision being appealed, use the required form, and proceed through several levels of appeal: (1) informal resolution; (2) first formal level appeal; (3) second level appeal to institution head; and (4) third level appeal to the Director of the CDCR.  Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.5(a)-(d), 3084.6(c) (October 15, 2009).  (Rosander Decl. ¶ 11.)

18.   Plaintiff was required to obtain a decision at the third level (Director's Level) in order to fully exhaust.  Cal. Code Regs. tit. 15, § 3084.1(a) (October 15, 2009).  (Rosander Decl. ¶ 12.)

## V.   DEFENDANT'S MOTION

Defendant argues that Plaintiff failed to exhaust his administrative remedies for his claim against Defendant, because none of the four grievances filed by Plaintiff between January 20, 2010 and March 8, 2011, and accepted and adjudicated at the third level of review between January 20, 2010 and March 8, 2011, and related to Plaintiff's placement and retention in AdSeg in and around the time of the events in the complaint, alleged that Defendant retaliated against Plaintiff for exercising his First Amendment rights.  Defendant argues that none of the appeals names Defendant or describes him in such a way that he could be identified through his

actions.  Defendant also argues that Plaintiff's grievances and appeals did not put the prison on sufficient notice of potential claims involving Defendant or for the issues in the complaint.

Defendant submits evidence showing that on April 1, 2010, Plaintiff submitted grievance CCI-0-10-00486, complaining that the March 31, 2010 segregation violated his due process rights because he was not provided with a staff assistant or an investigative employee and did not decline to have witnesses present at the hearing.  (DUF 9; Rosander Decl. ¶ 7, Ex. E.)  Plaintiff did not claim in this grievance that he was placed or retained in AdSeg by Defendant in retaliation for filing inmate 602 appeals or lawsuits.  (Id.)  Plaintiff submitted this appeal to the Director's Level of Review, where it was denied.  (DUF 10; Briggs Decl. ¶ 9; Ex. A.)

Defendant submits evidence that on May 18, 2010, Plaintiff submitted grievance CCI-0-10-00698, complaining that he had not been transferred to another institution, in violation of Title 15, because two employees (but not Defendant) did not properly complete the necessary transfer paperwork.  (DUF 11; Rosander Decl. ¶ 8, Ex. F.)  Plaintiff submitted this appeal to the Director's Level of Review, where it was denied.  (DUF 11; Briggs Decl. ¶ 10, Ex. B.)

Defendant submits evidence that on June 6, 2010, Plaintiff submitted grievance CCI-0-10-00789, complaining about "adverse actions" taken by the Unit Classification Committee on June 2, 2010, but not about issues regarding placement and retention in AdSeg by Defendant as retaliation for filing inmate appeals or lawsuits.  (DUF 13; Rosander Decl. ¶ 9, Ex. H.)  Plaintiff submitted this appeal to the Director's Level of Review, where it was denied.  (DUF 14; Briggs Decl. ¶ 11, Ex. C.)

Defendant submits evidence that on June 30, 2010, Plaintiff submitted grievance CCI-0-10-00909, complaining that his placement in AdSeg on June 27, 2010 was in retaliation for exercising his protected rights under the Constitution.  (DUF 15; Rosander Decl. ¶ 10, Ex. I.)  On June 27, 2010, Plaintiff was placed in AdSeg because Sergeant Doser observed him passing a note to another inmate requesting a CDC-128G form from that inmate.  (Id.)  CDCR considers this act, known as "checking paperwork, an immediate threat to the safety and security of the institution, which requires their removal from general population and placement

11

in AdSeg.  (Id.)  Plaintiff contended that he was gathering information for a group appeal, not for "illicit purposes," and his placement in AdSeg was "an effort to curb [his] litigating activities."  (DUF 16; Rosander Decl. ¶ 10; Briggs Decl. ¶ 12, Ex. D.)   Plaintiff submitted this appeal to the Director's Level of Review, where it was denied.  (Id.)

Defendant also submits evidence that the four appeals discussed above were the only appeals filed by Plaintiff between January 20, 2010 and March 8, 2011, which were decided at the third level of review and relevant to Plaintiff's placement and retention in AdSeg in and around the time of the events in the complaint.  (Rosander Decl. ¶ 6; Briggs Decl. ¶13.)

Based on an examination of Defendant's Undisputed Facts and evidence, the court finds that Defendant has met his burden of showing evidence that there was an administrative remedy available to Plaintiff, but that Plaintiff did not exhaust the appeals process for his claim against defendant Steadman in this action.  However, the mere absence of exhaustion does not entitle Defendants to dismissal of this action.  See Brown, 422 F.3d at 935-36 ("[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or has been reliably informed by an administrator that no remedies are available").  As discussed above, § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).  Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust his available remedies, or that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

## VI.   PLAINTIFF'S OPPOSITION

The Court looks to Plaintiff's original Complaint, First Amended Complaint, and verified Declaration contained in his opposition.[12]

---

[12]In deciding a motion for summary judgment, the Court may consider other materials in the record.  Fed. R. Civ. P. 56.  Plaintiff signed the original Complaint and First Amended Complaint under penalty of perjury. (Docs. 1, 13.)  Plaintiff also signed his Declaration in support of his opposition under penalty of perjury.  (Doc. 49

In the original Complaint, Plaintiff indicates that he filed an appeal or grievance concerning all of the facts contained in the Complaint, and that his appeal CCI-0-10-00486 was partially granted at the Second level of review and denied at the Third level.  (Doc. 1 at 3 ¶III.B,C.)

In the First Amended Complaint, Plaintiff indicates that he filed an appeal or grievance concerning all of the facts contained in the First Amended Complaint, "[a]t each level my appeal was denied[, and]  I then re-sent it to the next level till fully exhausted."  (Doc. 13 at 3 ¶III.B,C.)

In his opposition, Plaintiff argues that he exhausted his remedies because he addressed his claims against defendant Steadman in two 602 appeals, CCI-0-10-00486/IAB#092-3876 and CCI-0-10-00698/IAB#1002158.

Plaintiff declares that in appeal CCI-0-10-00486/IAB#092-3876, he complained that he was denied due process, stating that "[t]here is no reason I should be in AdSeg" and requesting "[t]o be released from AdSeg to the 4A GP yard."  (Decl. of Plaintiff, Doc. 49 at 14 ¶5, Exh. A.)  Plaintiff declares that when he was interviewed at his cell door by CCI E. Stelter, as part of the appeals process, he told Stelter:

> "Steadman put me in here out of retaliation for filing 602's and lawsuits against CCI.  He blatantly said so in committee on 1-20-10 at 4B SHU.  He was really pissed about all the paperwork I have filed against CCI prison officials.  There was no mention of the 4-6-09 memo at the hearing and CSR rejected his decision to put me in AdSeg as 'Unsupported' on 2-16-10.  I thought I would be released soon.  Now I get this 3-31-10 114D that mentions the 4-6-09 memo as rationale for AdSeg retainment.  But it's just a bogus cover.  IGI just did an investigation of the 4-6-09 memo a couple months ago and concluded I had no safety concerns because of it.  It's in my central file right now.  Now I am being denied any chance of fighting this by not being allowed a IE, SA, or witnesses."  (Decl. of Plaintiff, Doc. 49 at 15 ¶7.)

Plaintiff declares that Stelter then said:

> "So let me get this straight.   You're appealing Steadman's alleged retaliation of putting you in AdSeg for filing appeals and

at 13-77.)  Therefore, Plaintiff's opposition to the motion for summary judgment is based in part on the evidence in his verified Complaints, Declaration, and the Exhibits supporting these documents.

lawsuits and the denial of IE, SA, and witnesses you say you need to prove the 4-6-09 memo issue is a sham cover for Steadman's retaliation?" (Id.)

Plaintiff declares that "Stelter said 'OK' and then left." (Id.) Plaintiff asserts that Stelter knew that Steadman was retaliating against Plaintiff because at a hearing on April 8, 2010, Stelter heard Steadman say, "Are you ready to cooperate and stop these 602's and lawsuits? Drop them and I'll kick you out to the mainline right now." (Id. ¶8; First Amended Complaint, Exh. E.) Plaintiff believes that Steadman did not include the retaliation issue in his report because he was protecting Stelter. (Decl. of Plaintiff, Doc. 49 at 15 ¶8.)

Plaintiff submits evidence that in appeal CCI-0-10-00698/IAB#1002158, he complained about his lack of transfer out of AdSeg. (Decl. of Plaintiff, Doc. 49 at 16 ¶9, Exh. B.) Plaintiff asserts that he complained about transfer because that was his only other way [besides release to the Yard] out of AdSeg. (Id. at 15 ¶9.) To his surprise, Plaintiff was released from AdSeg on May 20, 2010. (Id. at 16 ¶9.) When he was interviewed about this appeal by CCII D. Chapman, Plaintiff told Chapman the whole story about why he was in AdSeg, explaining that his confinement was needless and the only reason he was in AdSeg was because of Steadman's retaliation against him for filing 602's and lawsuits. (Id. at 16 ¶10.) When Plaintiff resubmitted this appeal for a second level response, he stated that his AdSeg retention was arbitrary and the rationale of the 4-6-09 memo was bogus. (Id.) Plaintiff also declares that he was told by a counselor that the reason his case was rejected by CSR was because Steadman told the counselors working up the case to omit paperwork, to keep Plaintiff from transferring, out of retaliation, because he couldn't keep Plaintiff in AdSeg anymore. (Id.)

Plaintiff argues that his oral interviews with prison officials put CCI officials on notice of Plaintiff's claims. He also argues that the oral interviews are required as part of the appeals process, and that an appeal consists not only of the written words on the appeal form, but the spoken words given at the appeal interview. Plaintiff also argues that he was unable to fully explain all of his issues because the 602 form, which he was required to use, only contains eight lines to write on to "Describe Problem," and he was only allowed to attach one continuation page to the 602 form. Plaintiff argues that because the 602 form contains such

limited room for an inmate to write, the interview gives an inmate a chance in his own words to explain the appeal issue and add details and data, and clarify the appeal issue.   In his declaration, Plaintiff asserts that the prison's Department Operational Manual §54100.14 provides as follows:

> "Because many people have difficulty in expressing themselves in writing, a face-to-face interview with the inmate or parolee shall be conducted at the first level of review.   Additional interviews shall be conducted at the second and third levels when it is necessary to obtain additional data or to clarify the appeal issue."  (Decl. of Plaintiff, Doc. 49 at 14 ¶6.)

Plaintiff disagrees with Defendant's assertion that the word "retaliation" must be written on the appeal, arguing that Defendant only cites cases without precedent value in support of this assertion.  Plaintiff argues that he placed CCI prison officials on notice of the retaliatory nature of his illegal AdSeg confinement, which is all he was required to do.

## VII.   DEFENDANT'S REPLY

Defendant argues that Plaintiff's two 602 appeals, CCI-0-10-00486/IAB#092-3876 and CCI-0-10-00698/IAB#1002158, did not exhaust Plaintiff's remedies or place CDCR on notice of the claims in this lawsuit against defendant Steadman.

Defendant shows evidence that in Plaintiff's appeal CCI-0-10-00486/IAB#092-3876, Plaintiff did not mention defendant Steadman, defendant Steadman's alleged retaliatory actions, or the ICC hearing on January 20, 2010.  (Exhibit to Pltf's Opp'n, Doc. 49 at 18-20.) With respect to Plaintiff's alleged cell-front interview in which he clarified that his grievance was against defendant Steadman for retaliation, Defendant argues that Plaintiff has not provided any admissible evidence in the form of a declaration or documentary evidence that this conversation actually took place.  Defendant also argues that the appeal is the best evidence of what claim the prison was put on notice about, and Plaintiff's purported conversation is not admissible evidence.  Defendant also argues that Plaintiff failed to follow the instructions under CDCR's applicable regulations which required him to "describe the problem and the action requested" in his grievance form, and to file an appeal within 15 working days of the event or decision being appealed.  Defendant argues that Plaintiff's statement in the appeal that there

was "no reason" he should be in AdSeg and that he wanted "to be released from AdSeg to the 4A GP yard" was not sufficient in itself to alert the prison that he believed his confinement in AdSeg was based upon retaliatory conduct by defendant Steadman, which Plaintiff concedes in his opposition.  Defendant points out that despite Plaintiff's alleged conversation alerting the prison that his appeal was about retaliation, Plaintiff did not mention retaliation by defendant Steadman as one of his appeal issues at the Second or Third levels of review, and nothing in the Second or Third level responses suggests that the reviewer was responding to an interview or grievance concerning defendant Steadman placing him in AdSeg on January 20, 2010 and retaining him there in retaliation for filing 602's and lawsuits.  (ECF No. 49 at 19-24.)

Defendant asserts that for appeal CCI-0-10-00698/IAB#1002158, Plaintiff's statements made during the oral interview are inadmissible hearsay unsupported by admissible evidence that the conversation actually took place.  Defendant again argues that the grievances themselves are the best evidence of Plaintiff's claims; that Plaintiff failed to follow instructions to "describe the problem and the action requested" in his grievance form" and file the appeal within 15 days; and that Plaintiff failed to include enough information in the grievance to alert prison officials "to the nature of the wrong" for which he was seeking redress.  Defendant argues that the appeal was filed untimely because it was filed on May 18, 2010, more than 15 days after the January 20, 2010 hearing placing him in AdSeg.  Defendant argues that Plaintiff failed to include, in his original grievance, any of his alleged statements made to D. Chapman about defendant Steadman's retaliation, and therefore failed to exhaust his remedies.  Defendant argues that Plaintiff's request in his appeal for compensation for "needlessly depriving [him] of [his] liberty interest in being free from AdSeg" is not tantamount to grieving retaliation by defendant Steadman, and asserts that Plaintiff concedes in his opposition that this appeal was not sufficient to alert the prison about his retaliation claim.  Defendant also argues that Plaintiff did not mention retaliation by defendant Steadman as one of his appeal issues at the Second or Third levels of review, and nothing in the Second or Third level responses suggests that the reviewer was responding to an interview or grievance concerning Plaintiff's retaliation claim against defendant Steadman.

16

Defendant argues that Plaintiff's claim that he did not have enough room on the 602 form to write in detail is without merit, because Plaintiff had ample room on the form and could have written much more.   Defendant asserts that Plaintiff is mistaken that Defendant stated in his motion that the word "retaliation" must be written on the appeal in order to put prison officials on notice of his retaliation claim, and Defendant instead argued that Plaintiff must indicate that the complained-of actions were motivated by his protected conduct.   Defendant also argues that Plaintiff cannot claim not to know how to state a retaliation claim, because in his appeal CCI-0-10-00909 on June 30, 2010, Plaintiff used language specific to his grieved issue of retaliation, stating, "Inmate Goolsby is being housed in AdSeg in retaliation for exercising his protected rights under the U.S. and California Constitution's and C.C.R. Title 15. Prison officials Lt. CA Tuner and Lt. Schuyler are violating C.C.R. Title 15 § 3163 and § 3160(a) '... staff shall not in any way retaliate against or discipline any inmate for initiating or maintaining a lawsuit.'" (Doc. 45-4 at 28-31.)

Based on this evidence, Defendant argues that he is entitled to summary judgment on the issue of exhaustion.

## VIII.   ANALYSIS

This action now proceeds on only one claim, against defendant Steadman for retaining Plaintiff in AdSeg from January 30, 2010 until May 20, 2010, out of retaliation for Plaintiff filing 602 appeals and lawsuits.  (DUF 2.)   Between January 20, 2010 and March 8, 2011, Plaintiff submitted four grievances that were in some way related to his placement and retention in AdSeg in and around the time of January 20, 2010 and May 20, 2010, and that were accepted and adjudicated at the Director's Level review between January 20, 2010 and March 8, 2011.  (DUF 6-8.)  Plaintiff has conceded that two of the four 602 appeals, log nos. CCI-0-10-00789/IAB#1003443 and CCI-0-10-00909/IAB#1003455, are not related to this lawsuit and did not exhaust his remedies for the retaliation claim in this case.   (Pltf's Opposition, Doc. 49 at 1.)   Therefore, only two appeals, CCI-0-10-00486/IAB#0923876 (hereinafter "10-486") and CCI-0-10-00698/IAB#1002158 (hereinafter "10-698") are at issue in the present motion for summary judgment.

17

**Appeal 10-486**

Appeal 10-486 was submitted by Plaintiff on April 1, 2010.  (DUF 9; Exh. A to Doc. 45-3 at 8.)   The court has reviewed the written appeal, in which Plaintiff requests a new segregation review and to be released from AdSeg, because his due process rights were violated at his prior segregation review which resulted in a segregation order dated March 31, 2010.  (Doc. 45-3 at 8, 10.)   Plaintiff complains that he was not given a staff assistant, investigative employee, witnesses, or 72 hours in which to prepare for the prior hearing. (Id.) Plaintiff states that "[t]here is no reason I should be in AdSeg" and that he is "being retained in AdSeg for non-disciplinary reasons." (Id.)   The Informal and First levels of review were bypassed, and Plaintiff's appeal was partially granted at the Second level of review.  (Id. at 8-9.)   Plaintiff submitted the appeal to the Third level of review on May 19, 2010, again requesting to be released from AdSeg.  (Id. at 9.)   Plaintiff also requested a copy of a "confidential memo 7-29-09," a staff assistant, and witnesses.  (Id.)   The appeal was reviewed and denied at the Third level on December 28, 2010.  (Id. at 6-7.)

**Appeal 10-698**

Appeal 10-698 was submitted by Plaintiff on May 18, 2010.  (DUF 11; Exh. B to Doc. 45-3 at 27.)   The court has reviewed this appeal, in which Plaintiff requests to be transferred to another facility, complaining that he was not transferred within 30 days of transfer paperwork issued by the ICC on January 20, 2010.  (Doc. 45-3 at 27.)  In the alternative, Plaintiff requests compensation "for needlessly depriving me of my liberty interest in being free from AdSeg." (Id.)   Plaintiff states that "[t]his appeal concerns my transfer, or lack of transfer," and complains that "CCI D. Pierce and CCII Stelter have failed repeatedly to adequately file paperwork allowing my transfer."  (Id.)   Plaintiff also complains that "CCII Stelter refuses to informally answer any of my numerous (602) appeals."  (Id. at 27, 29.)   On June 1, 2010, the appeal was partially granted at the First level of review, approving the transfer and notifying the Chief of Classification.  (Id. at 33.)

On June 14, 2010, Plaintiff submitted the appeal to the Second level, complaining that he had not been "transferred or been endorsed due to the CCI 'Reliability Statement' issued

with CSR." (Id. at 31.)   Plaintiff further complains that his "ASU retention was arbitrary" and he was kept there on confidential information.  (Id.)  On July 14, 2010, the appeal was partially granted at the Second level, stating that "the institution has not been able to get the appellant's case endorsed, pending additional documentation needed prior to endorsement," and that Plaintiff's "case will be presented to the CSR upon its completion for endorsement."  (Id. at 34.)

On July 16, 2010, Plaintiff submitted the appeal to the Third level of review, complaining that "I still have not [been] transferred solely due [to] classification counsellor's repeated failure to prepare my case to CSR standards.  (Id. at 31 ¶H.)  Plaintiff then states, "Further my being 'pending investigation' is pure retaliation for appealing."  (Id.)  On February 23, 2011, the appeal was denied at the Third level of review.  (Id. at 41-42.)

**Discussion**

The Court rejects the threshold argument that Plaintiff failed to exhaust remedies because he did not timely file his appeals.  Timely filing is part of the appeals process, and "[p]roper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, Woodford, 548 U.S. at 90, and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal," Id. at 83-84.  However, appeals coordinators have the discretion to accept untimely appeals.  Cal. Code. Regs., tit. 15, §3084.3(c)(7)  (2009) ("An appeal *may* be rejected [if] time limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." (emphasis added.))  It is clear from the evidence that despite any delay in filing, both of Plaintiff's appeals at issue were not rejected as untimely, and they were reviewed and adjudicated at all levels.

The court also rejects Plaintiff's argument that the written appeals, alone, adequately discussed his retaliation claim.  Plaintiff's language in appeal 10-486 -- "There is no reason I should be in AdSeg," and his request "to be released from AdSeg to the 4A GP yard," (Doc. 49 at 18, 20), does not sufficiently address his retaliation claim.   It does not mention defendant Steadman or make any claim that he was detained in AdSeg because he filed appeals or

lawsuits.   The court concurs that Plaintiff was not required to name all the defendants, state legal theories, or use the word "retaliation," but the language on the written appeals, without more, did not address Plaintiff's retaliation claim.   Plaintiff's appeal 10-486 clearly complains about denial of due process rights and not retaliation.   Plaintiff's appeal 10-698 clearly complains about the delay in Plaintiff's transfer due to CCI D. Pierce and CCII Stelter's failure to adequately file paperwork allowing the transfer, but not about retaliation.   Plaintiff does not address retaliation until the Third level of review, which is not sufficient, and Plaintiff does not refer to defendant Steadman by name or in any way that the prison would be able to identify him.   Neither of the appeals named defendant Steadman or claimed that Steadman had acted against Plaintiff because of Plaintiff's 602 appeals and lawsuits.     To exhaust administrative remedies, a grievance must be factually sufficient to "alert the prison as to the nature of the wrong for which redress is sought."   Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). Plaintiff's written appeals did not adequately refer to his retaliation claim.   Therefore, the court finds that Plaintiff's written appeals, without more, did not adequately address Plaintiff's retaliation claim against Defendant.

Plaintiff's argument that the First Level inmate interview is considered part of the appeals process is persuasive.   Plaintiff does not indicate which version of the CDCR's Department Operations Manual (DOM) he cites.[13]   However, the current version of the DOM has similar language:  "In order to provide the appellant the opportunity to clarify his or her issue(s) and the reviewer to ask questions, at least one face-to-face interview with the inmate or parolee shall be conducted at the first level of review, [with listed exceptions]."   CDCR DOM § 54100.14, The 2014 DOM at 518.[14]   In both versions, the purpose of the interview is to clarify the issue or issues addressed in the appeal.   However, there is no indication in the CDCR's

---

[13]   Plaintiff asserts that DOM § 54100.14 provides that "[b]ecause many people have difficulty in expressing themselves in writing, a face-to-face interview with the inmate or parolee shall be conducted at the first level of review.   Additional interviews shall be conducted at the second and third levels when it is necessary to obtain additional data or to clarify the appeal issue."   (Decl. of Plaintiff, Doc. 49 at 14 ¶6.)

[14]   http://www.cdcr.ca.gov/Regulations/Adult_Operations/DOM_TOC.html   (last visited 12/05/2014).

DOM that the oral interview is meant for adding issues not stated in the written appeal, as Plaintiff did. Such a rule would confuse the entire appeals process, call into doubt decisions made by officials, and conflict with the Director's Level Decision for appeal 10-698 which advised Plaintiff that "new issues" added to an appeal shall not be addressed in the appeal, and "must be submitted to the institution for review separately in order to allow institutional staff the opportunity to respond and possibly provide the appellant with a satisfactory response." (Doc. 45-3 at 7 ¶III.A.) Allowing Plaintiff to address new issues in the middle of an appeal would undoubtedly conflict with the purpose of an appeal, which is to clearly give officials notice of the issue at hand.

Defendant's hearsay argument shall not be adjudicated. The parties have not briefed the hearsay issue, and in light of the discussion above, the court finds the hearsay issue to be moot.

Plaintiff's argument that the 602 form was deficient, because the form only allowed him eight lines to write at the Third Level of review, is without merit. The Third Level is for appealing the official's decision at the Second level, not for notifying the official with extensive discussion that the appeal issue is different than stated. Plaintiff has not shown that he needed more than eight lines to state that he disagreed with the Second Level decision because he had not been released from AdSeg or transferred. As argued by Defendant, given the number of his appeals, Plaintiff's familiarity with appeal procedure cannot be disputed, and evidence shows that Plaintiff is capable of clearly bringing an appeal about retaliation.

Plaintiff has not presented any evidence other than his own declaration that he discussed his retaliation claim at oral interviews. Plaintiff submits no documentary evidence in support of his allegations and relies only on his memory. Moreover, Plaintiff contradicts himself. On one hand, he states that he told prison officials about his retaliation claim at oral interviews conducted after the First level of review. On the other hand, Plaintiff states that he did not realize until the Third level of review that the reason he was not being transferred was that defendant Steadman was retaliating against him.

///

## IX.     CONCLUSION AND RECOMMENDATIONS

Defendant has met his burden of demonstrating that under the undisputed facts, Plaintiff failed to exhaust his remedies prior to filing suit, in compliance with § 1997e(a).  Defendant has shown an absence in the official records of any evidence that Plaintiff filed an inmate appeal pursuant to Title 15 of the California Code of Regulations § 3084.1, et seq., concerning Plaintiff's allegations in the complaint against the sole defendant in this action, defendant Steadman.  Plaintiff has not submitted evidence of disputed material facts calling into question whether he satisfied the exhaustion requirement for his claim against defendant Steadman.  Therefore, **IT IS HEREBY RECOMMENDED that** Defendant's motion for summary judgment, filed on August 13, 2014, be GRANTED, and this action be dismissed in its entirety, without prejudice, based on Plaintiff's failure to exhaust.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __**December 17, 2014**__          _____/s/ **Gary S. Austin**_____
                                                   UNITED STATES MAGISTRATE JUDGE